UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| PATRICIA DONAHUE § <br> § <br> **Plaintiff,** § <br> § <br> v. § <br> § <br> M1 SUPPORT SERVICES, L.P., § <br> § <br> **Defendant.** § | Civil Action No.: 1:21-cv-497 <br> **DEMAND FOR JURY TRIAL** |

# COMPLAINT

## INTRODUCTION

1. This is an action for redress of unlawful conduct committed by the Defendant in violation of Title VII of the Civil Rights Act of 1964 as amended ("Title VII"), 42 U.S.C. 2000(e) et. seq., and The Age Discrimination in Employment Act of 1967 as amended ("ADEA") 29 U.S.C. 621. The Plaintiff requests a trial by jury of all issues so triable to a jury.

## PARTIES

2. At all relevant times herein, the Plaintiff, Patricia Donahue (hereinafter "Plaintiff" or "Ms. Donahue") has been an Alabama resident over age 19 and was an employee for purposes of Title VII, 42 U.S.C. 2000e-2.

3. M1 Support Services, L.P. ("M1") is a Texas corporation, registered to do business in the State of Alabama. Upon information and belief, M1 is engaged in commerce in Alabama and does business in Dale County, Alabama where it employed the Plaintiff. It employs more than 15 people and is an employer for purposes of Title VII, 42 U.S.C. 2000e and 29 U.S.C. 621 and all purposes herein.

## JURISDICTION AND VENUE

4. The jurisdiction of this court is invoked pursuant to 28 U.S.C. §1331, 28 U.S.C. §1367, 29 U.S.C. § 2617 and 42 U.S.C. 2000e-2.

5. M1 Support Services, L.P., ("M1") ("Defendant") employed the Plaintiff in Dale County, Alabama where the events or omissions giving rise to the Plaintiff's claims occurred.

## ADMINISTRATIVE PREREQUISITES

6. Plaintiff timely filed her charge of discrimination with the Equal Employment Opportunity Commission on November 27, 2019. The EEOC Dismissal and Notice of Rights was issued and received by the Plaintiff through counsel on May 3, 2021. This Complaint is filed within ninety (90) days of Plaintiff's receipt of her Notice of Rights.

## STATEMENT OF FACTS

7. Ms. Donahue began work for the Defendant in February 2018 when it assumed the Maintenance Service Contract at Fort Rucker. The Maintenance Service Contract was formerly held by L3/Army Fleet Support, and Ms. Donahue had been employed with L3 since 2008 and had served as their Logistics/Supply Chain Senior Director since 2010.

8. In February 2018, the Defendant hired Ms. Donahue to serve on its transition team and Ms. Donahue worked for both L3 and M1 for approximately two months.

9. During the transition period, the owners of M1, Kathleen Hildreth and William Shelt, assured Ms. Donahue that she would continue as the Director of Logistics/Supply and that she would be included in their bonus program for the directors who served at Fort Rucker.

10. The other director positions at M1 included two Directors of Maintenance, Director of Quality, Director of Contracts, Director of Business Operations, and Director of

Finance. Later, two other director positions were created: Director of Human Resources and Director of Training.

11. On or about April 1, 2018, M1 formally assumed the maintenance contract and Ms. Donahue continued in her position as the Director of Logistics/Supply where she had complete responsibility for logistics and supply chain operations, overseeing 350 employees across the five airfields located in and around Fort Rucker. Ms. Donahue was also responsible for the Quality Deficiency Reporting program (QDR) and Government Industrial Property Management. In addition, she was also head of the Facility Engineer Department with project responsibilities over 89 buildings. M1 added the Aviation Life Support Shops to her responsibilities as well.

12. Under the maintenance contract, incentive compensation is paid or withheld from the contractor based on certain metrics established by the government and Ms. Donahue's department continued to function well relative to the established metrics. The government inspected the facilities and operations monthly and sometimes weekly, and Ms. Donahue's departments maintained monthly and quarterly statistics. In her last rating, her department was rated at 89% which was well over the 80% target established by M1.

13. In May 2018, Don Galli, a retired Army colonel, was hired as General Manager/Supervisor of the M1 facility, and he became her direct supervisor.

14. In 2018, there were only two female directors, Ms. Donahue and Marianne Luttrell who was the Director of Contracts. Less than a year after Mr. Galli was hired, Ms. Luttrell was terminated in an alleged reorganization.

15. After Mr. Galli was hired, Ms. Donahue was excluded from many senior leadership meetings which she needed to attend in order to discuss issues which impacted her

department. She was also excluded from meetings with the government, even when her counterpart in the government was present.

16. In December 2018, a position in Ms. Donahue's department became available and Mr. Galli specifically told Ms. Donahue not to hire a female, but rather hire a male for the position and preferably one from the military. Mr. Galli referred to Ms. Donahue and the women in the department as the "Ozark Mafia."

17. In April 2019, Ms. Donahue received her only performance evaluation and Mr. Galli rated her as exceeding expectations. She never received any other evaluation and was never written up for any disciplinary or work performance matter. Despite her good evaluation, in April 2019, she did not receive a bonus while all of the male directors did receive one.

18. In May 2019, when Ms. Donahue turned 60 years old, everyone became aware of her age and she took some ribbing for it.

19. Thereafter, in July 2019, Mr. Galli and Deputy General Manager, Marlin Brandon, called Ms. Donahue into a meeting and asked if she was tired or overwhelmed, insinuating that she was too old. At that time, Ms. Donahue protested the discriminatory conduct in which she was excluding from meetings as well as Mr. Galli's comments regarding having too many women in her department and wanting her to hire a man to fill a certain position.

20. About 90 days later, on or about October 23, 2019, Ms. Donahue was terminated in another alleged "reorganization." Ms. Donahue was given the choice to resign or be terminated, and she told them that she would not resign.

21. After her termination, her primary duties were transferred to a younger male, Wade McIntyre, who does not have Ms. Donahue's credentials or level of experience.

22. At the director level, Marianne Lutrell and Ms. Donahue were the only two who have been terminated from employment during these alleged reorganizations. When other departments have been reorganized, male directors were reassigned, but not terminated.

## COUNT ONE
## TITLE VII – SEX DISCRIMINATION

23. Plaintiff realleges and incorporates by reference the factual allegations in paragraphs 1-22 above as if fully stated herein.

24. Title VII of the Civil Rights Act of 1964, as amended, states that "no employer shall fail or refuse to hire or discharge any individual, or otherwise discriminate against any individual with respect to her compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2(a)(1).

25. The Defendant, through Mr. Galli, engaged in unlawful sex discrimination and violated Title VII as follows:

   a) Excluding Ms. Donahue from senior leadership meetings as well as meetings with the government;

   b) Telling Ms. Donahue that there were too many women in her department;

   c) Instructing Ms. Donahue not to hire a female, but rather hire a man for the position and preferably one from the military;

   d) Referring to Ms. Donahue and the women in her department the "Ozark Mafia";

   e) By failing to pay Ms. Donahue a bonus while all of the male directors received a bonus.

26. As a proximate result of the foregoing acts and omissions of the Defendant, the Plaintiff has suffered damages including, but not limited to, loss of earnings, benefits, and

other pecuniary loss as well as severe emotional and mental distress, anguish, humiliation, embarrassment and anxiety.

27. Defendant's conduct was willful, malicious, and intentional and in conscious disregard of Plaintiff's rights and the law and therefore justifies an award of punitive and exemplary damages in an amount to be determined at trial.

28. As a result of the Defendant's acts as alleged herein, Plaintiff is entitled to reasonable attorneys' fees and costs of suit as provided by law, including but not limited to compensatory damages, punitive damages and attorneys' fees.

## COUNT TWO
## AGE DISCRIMINATION

29. Plaintiff realleges and incorporates by reference herein paragraphs 1 through 29 above.

30. The ADEA states that is shall be unlawful for an employer: "(1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age; [or] (2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age." 29 USC 623.

31. The Defendant violated the ADEA as follows:

    a)    By excluding Ms. Donahue from senior leadership meetings as well as meetings with the government;

    b)    Allowing Ms. Donahue to be teased about her age;

    c)    Asking if Ms. Donahue was tired or overwhelmed, insinuating that she was too old;

  d)   By terminating Ms. Donahue's employment and replacing her with a younger male without her credentials or level of experience.

32. As a proximate result of the foregoing acts and omissions of the Defendant, the Plaintiff has suffered damages including, but not limited to lost retirement benefits and/or other compensation which was denied her by reason of the violation, together with the interest, and liquidated damages.

33. The Plaintiff will also seek an award of attorney's fees, expert witness fees, and other costs of the action to be paid by the Defendant and other damages allowed by law.

WHEREFORE, the Plaintiff prays that judgment be entered in her favor and against the Defendant herein for all such damages which are allowed by law to redress the wrong committed in violated of the Age Discrimination in Employment Act.

## COUNT THREE
## TITLE VII – RETALIATION

34. Plaintiff realleges and incorporates by reference the factual allegations in paragraphs 1-23 above as if fully stated herein.

35. Ms. Donahue engaged in protected activity under Title VII by opposing and reporting the unlawful practice of sex discrimination and by participating in protected activity under that statute.

36. As a result of engaging in protected activity, the Defendant retaliated against Ms. Donahue causing her to suffer adverse employment actions when it terminated her employment.

## EQUITABLE PRAYER FOR RELIEF

WHEREFORE, the Plaintiff, in addition to the above claimed legal remedies also prays for a declaratory judgment holding that the actions of the Employer, described above,

violated and continue to violate the rights of the Plaintiff as secured by the respective federal statutes and that a permanent injunction enjoining the Employer, its agents, affiliates, successors, employees, attorneys and those acting in concert with the Defendant and on the Defendant's behalf from continuing to violate such laws and for such other and equitable relief as appropriate.

Respectfully submitted this 26th day of July, 2021.

/s/ M. Amelia Mitta
M. Amelia Mitta (ASB-4480-B18P)
Ashton Ott (ASB-7085-E58A)
FarmerPrice LLP
100 Adris Place
Dothan, Alabama 36303
Tel:   334/793-2424
Fax:   334/793-6624

**PLAINTIFF DEMANDS TRIAL BY STRUCK JURY
ON ALL ISSUES TRIABLE TO A JURY.**

/s/ M. Amelia Mitta
M. Amelia Mitta

**SERVE DEFENDANT AT:**
Corporation Service Company, Inc.
641 South Lawrence Street
Montgomery, AL 36104